ADAMS, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:17CR81 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge John R. Adams |
| MARCUS D. FLEMING, | ) | |
| | ) | SENTENCING MEMORANDUM |
| Defendant. | ) | |
| | ) | |

**I. Introduction**

On April 4, 2019, the Court conducted Defendant Marcus D. Fleming's resentencing hearing. During that hearing, the Court imposed a total sentence of 84 months of incarceration. This memorandum will serve to supplement the Court's rulings during the sentencing hearing.

**II. Sentencing Process**

Criminal sentencing is often described as a three-step process. A district court must begin the process by calculating the advisory guideline range suggested by the United States Sentencing Commission. *Rita v. United States*, 551 U.S. 338, 351 (2007) ("The sentencing judge… will normally begin by considering the presentence report and its interpretation of the Guidelines."). In so doing, the Court must determine the offense level for the crimes for which the defendant has been convicted and the defendant's criminal history. *See United States v. Boyd*, No. 3:07-CR-3, 2008 WL 4963198, at *14-16 (E.D.Tenn. Nov. 18, 2008).

Next, the Court must determine whether a variance or departure from the advisory

guideline range would be appropriate. *United States v. Collington*, 461 F.3d 805, 807 (6th Cir. 2006).

> Finally, a sentencing court must independently evaluate each of the factors in 18 U.S.C. § 3553(a), which details the considerations that a district court must weigh before sentencing a criminal defendant. Although the Guidelines form a starting point in the district court's analysis under 18 U.S.C. § 3553(a), a district court may not presume that the sentence suggested by the Guidelines is appropriate for an individual criminal defendant. A district court may hear arguments by prosecution or defense that the Guidelines sentence should not apply. In this way, a sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure. Ultimately, however, a court must exercise its independent judgment in sentencing a defendant.

*United States v. Stern*, 590 F.Supp.2d 945, 949 (N.D.Ohio 2008) (citations and quotations omitted).

**III. Analysis**

1. Guideline Computation

The parties agree upon the Guideline calculation applicable to Fleming, and the Court agrees with that calculation. After acceptance of responsibility, Fleming's final offense level is 21. With his criminal history category, the resulting advisory guideline range would become 41 to 51 months. As this range falls below the mandatory minimum of 60 months, Fleming's guideline range becomes the mandatory minimum, 60 months.

2. § 3553(a) Factors

**a) Nature and Circumstances of the Offense**

Fleming was stopped by the Ohio State Highway Patrol on July 18, 2016 in Canton, Ohio. A subsequent search of his vehicle revealed 989 grams of cocaine in a backpack on the rear floorboard of the vehicle. Fleming pleaded guilty to possession with intent to distribute the nearly

2

one kilogram of cocaine.

### b) History and Characteristics of the Defendant

Fleming's history is somewhat unique in that reviewing it entails reviewing information not only for Marcus Daniele Fleming, but also for Jimmy Thomas, Jimmie Thomas, Rickey L. Nelson, Roy Green, Richard Cook, Richie Rich, Young Gerald, Markus Fleming, and Gerald Young. Within these aliases, Fleming utilized at least three different social security numbers and six different dates of birth.[1]

Fleming's first conviction came at the age of 18 for drug abuse based upon his possession of cocaine. It was also the first appearance of an alias used by Fleming, Jimmy Thomas. A year letter, 19-year old Fleming was convicted of loitering in aid of a drug offense. Fleming, however, was convicted under another alias name, Roy Green, with an altered date of birth of February 3, 1971. In April of 1991 and June of 1991, this same Roy Green was convicted of obstructing official business and drug abuse. In August of 1991, Roy Green, aka Gerald Young, was convicted of aggravated trafficking of cocaine.

Fleming's next conviction came in May of 1997 for disorderly conduct. The original charge was improperly handling a firearm in a motor vehicle. While the charge was pled down to a fourth-degree misdemeanor, it does not appear that Fleming was ever charged with weapons under disability despite possessing the firearm following a felony conviction. Fleming received only a suspended 30-day jail sentence and apparently was not deterred from carrying a firearm.

---

[1] Fleming objected to the Court's recitation of his of these aliases, but he did not state a basis for that objection. In any event, the information is not disputed and therefore appropriately considered as Fleming's history and characteristics and his criminal history.

On June 21, 2000, Fleming was convicted of felonious assault with a firearm specification. The indictment in that matter alleged that Fleming shot the victim three times in the legs and back with a pistol. Fleming received a seven-year sentence for his conviction. It appears from his history that an older matter was resolved at the same time as this felonious assault conviction. On the same day as seven-year this sentence, Fleming received a 1.5-year concurrent sentence for aggravated trafficking of cocaine stemming from his conduct in August of 1992. Despite this, by comparison, lengthy total sentence, Fleming now appears before this Court for once again trafficking in cocaine.

### c) Need for the Sentence Imposed / Afford Adequate Deterrence

Initially, the Court notes that Fleming has in various ways challenged the Court's ability to rely upon statistical evidence related to the drug epidemic ravaging Ohio. In that regard, the Sixth Circuit has noted that "district courts routinely focus on the harm defendants cause to the community." *United States v. Bunkley*, 732 Fed. App'x 388, 392–93 (6th Cir. 2018)(citing *United States v. Hodges*, 641 Fed. App'x 529, 532 (6th Cir. 2016). Moreover, the Circuit has also explained that it is permissible for the Court to rely on publicly available information when analyzing societal harm. *See United States v. Harris*, 585 Fed. App'x 893, 894-95 (6th Cir. 2014)(explaining that nothing in prior Sixth Circuit precedent prohibits district courts from properly considering publicly available statistics). Indeed, "courts routinely discuss societal conditions in this way[.]" *Bunkley*, 732 Fed. App'x at 393. Accordingly, in its explanation of the need to protect the public and the need for the sentence impose, the Court has relied upon publicly available statistics.

4

When addressing societal harm, the Court is mindful that much coverage in the news media and even the legal world has focused upon the opioid epidemic. The rapid rise of the distribution and use of fentanyl and its analogs and heroin have devastated communities. However, lost in the discussion of the harms caused by opioids is the trickle-down effect that the use of these drugs has on the use of other drugs. Simply utilizing the term "opioid epidemic" ignores far too much of the broader impacts that result from the increased use of opioids. For example, in Ohio in 2016, cocaine-related deaths rose 61.9% from the prior year.[2] *See* 2018 National Drug Threat Assessment, at p. 47 (Oct. 2018)(Doc. 70-1 at 59).

A staggering 80.2% of these deaths also involved an opiate. *Id.* In other words, nearly 4 out of every 5 deaths that were deemed "cocaine related" also found evidence of an opiate in the decedent's system. The fact that Fleming was not found to be in possession of an opiate does not absolve him of responsibility. Nationwide investigation and reporting "indicate[] most cocaine-fentanyl mixtures are most likely not mixed at the wholesale level and the majority are probably unintentional." *Id.* at p. 48 (Doc. 70-1 at 60). In one sense, Fleming is correct. He was not charged nor found to be selling or distributing any opiates. Instead, Fleming was "only" distributing cocaine. However, Fleming remains an important cog in the machine that has fueled this drug epidemic. He brought this poison into his own community for nothing more than financial gain and seeks to ignore many of the effects that flow directly and indirectly from his actions.

---

[2] Fleming makes much of the fact that upward trends are capable of manipulation based upon the chosen starting point. However, given that Fleming's conduct occurred in 2016, he cannot reasonably argue that the upward trend from the prior year is relevant to analyzing the impact of his criminal conduct.

In that vein, Fleming devoted a significant portion of his written arguments attempting to devalue any statistic that discussed "cocaine related" deaths or overdoses. Fleming highlighted that the term "cocaine related" did not demonstrate that cocaine *caused* or *contributed* to the death, but instead, merely demonstrated that cocaine was found in the decedent's system during an autopsy. Fleming is again correct in a very limited sense. Neither this Court, nor any fact-based reports, have directly attributed a set number of deaths to exclusively cocaine. However, Fleming's argument that this fact devalues the statistics is untenable.

In any given overdose death, cocaine may be found in the decedent's system. It is also conceivable that in that particular death that the cocaine played no direct, medical role in the death. However, simply because such a fact is conceivable does not suggest that cocaine in the decedent's system was not problematic. For example, there is no serious argument that cocaine in a decedent's system is somehow beneficial. Indeed, as noted above, a majority of cocaine-fentanyl mixtures are "probably unintentional." In other words, users intending to use cocaine are given a much deadlier mixture of cocaine and fentanyl. In that scenario, the fentanyl may be the sole medical cause of death. At the same time, *but for* the use of cocaine, no death would have occurred. As such, the Court finds relevance in statistics that detail cocaine-related deaths, but also credits Fleming's argument that such statistics must be accepted for what they are – data that does not necessarily indicate that cocaine directly caused the death reported.

In the end, the Court simply cannot draw a bright line between cocaine and the opioid epidemic. Divorcing one from the other simply ignores reality. Cocaine and opiates, particularly fentanyl and its analogues, are inextricably intertwined. How else could one explain that more

6

than 80% of deaths that involved cocaine also involved an opiate? As a result, deterring the sale of cocaine serves to protect the public from not only the effects of cocaine, but also to a smaller extent the effects of opiates.

Based upon the above, a significant sentence is needed for both general and specific deterrence. Drug traffickers must come to understand that their sentences will not be lighter solely because they chose to sell a poison to their community that is not an opiate. Rather, if their actions continue to contribute to an ongoing epidemic – a fact undeniably true when evaluating the sale of cocaine – a significant punishment must be utilized.

A significant sentence is also warranted to deter Fleming. As detailed above, prior encounters with the legal system have not deterred Fleming's conduct. Felony convictions in 1989 and 1991 did not deter Fleming from carrying a firearm in 1997 and 2000. A six-month sentence for Fleming's first drug-related crime in 1989 served as no deterrent as he engaged in another drug-related offense in 1990. While the 1990 conviction was minor, leading to only 3 days served in jail, it also had no deterrent effect. Fleming engaged in two more drug-related offenses in 1991 and received a one-year sentence. Fleming, however, still remained undeterred. In 2000, Fleming engaged in what was then his most serious offense to date and was convicted of felonious assault with a firearm specification. Specifically, Fleming shot a victim three times in the back and legs. For this conviction, Fleming was sentenced to seven years in prison.

Before this Court, Fleming asserts that this final state-court sentence in fact served to deter his conduct. Fleming asserts that for years following his release from this sentence, he has acted within the bounds of the law. Fleming, however, concedes that when financial problems arose,

7

he returned to his criminal ways and immediately began trafficking in cocaine once again. Moreover, while Fleming claims to have been law abiding during the gap in his criminal record, such a claim is somewhat suspect.  It strikes the Court as somewhat dubious that Fleming was wholly law abiding for nearly a decade and was then able to return to his criminal ways and purchase an entire kilogram of cocaine from a source with little to no difficulty.   It is also apparent from his actions that Fleming believed he would have no difficulty in selling the cocaine.

However, even if this Court were to give full credit to Fleming's assertions, the record still reveals that even a seven-year sentence did not deter Fleming. Instead, when financial troubles arose, he broke the law.   When he broke the law, Fleming returned to his all-too-familiar pattern of selling cocaine.   His repeated conduct, rather than his words, have demonstrated that a sentence beyond the mandatory minimum is necessary to deter him from *again* returning to drug trafficking in the future.

Three days was not enough to deter Fleming; 30 days was not enough; 6 months was not enough; 1 year was not enough; and 7 years was not enough.  After each of those prison terms, Fleming returned to his criminal conduct.   Accordingly, after consideration of the factors detailed above, including the need for general and specific deterrence, the Court finds that a sentence of 84 months followed by five years of supervised release is sufficient but not greater than necessary. It is only such a sentence that may finally serve to deter Fleming from returning to drug trafficking.

**IV.  Conclusion**

For the reasons stated herein and on the record during Fleming's resentencing hearing, the Court imposed a total sentence of 84 months incarceration.   All other terms and conditions of

Fleming's sentence were stated on the record and will not be reiterated herein.

    IT IS SO ORDERED.


| | |
|---|---|
| April 8, 2019 | /s/John R. Adams |
| Date | JOHN R. ADAMS |
| | UNITED STATES DISTRICT JUDGE |